(No. 13738.—Reversed and remanded.)
ROBERT S. BEATTY *et al.* Exrs. Defendants in Error, *vs.*
SARAH J. STANLEY, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. WILLS—*when discretionary power given to executors violates rule against perpetuities.* A provision in a will giving to executors, in trust, certain farm land, with power to rent or lease, as they may deem best, "the same to be my estate as long as any of my brothers or sister live and to be sold or leased as my executors may deem best, the proceeds to be divided" among the children of the testator's brothers and sister, must be construed as allowing the executors to sell only after the death of said brothers and sister, and the discretion then given the executors to sell or lease violates the rule against perpetuities, as the discretion might not be exercised within twenty-one years after the death of the brothers and sister.

2. SAME—*valid portion of will must be held void if holding rest of will invalid defeats testamentary plan.* Where a will is good in part and bad in part the valid part will be held void if it works such a distribution of the whole estate as was evidently never intended by the testator, but if the invalid parts can be separated from the valid part and effect still be given to the testamentary plan the valid part will be upheld and the invalid part disregarded.

3. SAME—*courts cannot change invalid portion of will in order to give effect to testator's intention.* All rules of construction must yield to the intention expressed in the will when such intention can be ascertained, but when the intention cannot be given effect because of an invalid provision the court cannot change the invalid provision so as to give effect to the intention.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. E. S. SMITH, Judge, presiding.

BRECKINRIDGE, BOSTICK & DANIEL, for plaintiff in error.

WHITESIDE & WRIGHT, for defendant in error Mary Beatty.

PAUL M. HAMILTON, WILLIAM P. BOYNTON, and R. C. CHAPPELL, guardian *ad litem,* for other defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error is prosecuted by plaintiff in error to reverse a decree of the circuit court of Jersey county construing the will of John R. Beatty, who died testate in Jersey county in May, 1918. At the time of his death he was the owner of 228 acres of farm land in Jersey county and some vacant lots in the city of Jerseyville. The total value of his real estate is alleged to be $27,000. He was the owner of personal property alleged to be worth $30,000. He left no widow, child or descendants of a child. He was survived by five brothers, Robert S., Martin L., Charles A., George B. and Joseph W. Beatty, and one sister, Sarah J. Stanley. At the time of his death there were seven children of a deceased brother living and two children of a deceased daughter of testator's deceased brother. The nephews and nieces referred to in paragraph 8 of the will are the children of testator's sister and of all his brothers except George B. Beatty and are twelve in number. For an intelligent understanding of the case it seems necessary to set out the will in full. It appears in the abstract as follows:

"Know all persons by these present that John R. Beatty Being of sound and disposing mind and memory do Publish this my last will and testament Being a resident of County of Jersey and State of Illinois

"1st I will and bequeath to the heirs of my brother Francis J. Beatty to Robert I beatty Eight Hundred Dollars to Perry Beatty, Seven Hundred Dollars to Harry G. Beatty six hundred Dollars to Almen Beatty Viola Beatty Joseph Beatty & Estell Beatty Five Hundred Dollars each to Ruth Parks & Neoma Parks three hundred Dollars one fifty each

"2 I will to Robert S. Beatty three thousand Dollars and his note of May Twenty fourth 1886 and all his daughter Mary Beatty may owe me on Rue hous and at the death of his daughter and himself if his estate is worth it they

to return four thousand Dollars and all other Money rec from my estate Back to my estate

"3 I will to Martin L. Beatty four thousand Dollars.

"4 I will and Bequeath to Joseph W. Beatty sixteen hundred Dollars and all claim I may hold on 80 acres known as West half of South East Quarter Section twenty four Town Eight Eleven West 3 principal meridian in Jersey County Illinois, and if said farm is sold he to Rec $4000 in full.

"5 I will and Bequeath to Charles A. Beatty Four Thousand Dollars

"6 I will to my sister Sarah J. Stanley one Dollar and order my Executors to pay George B. Stanley Two Thousand Dollars and Edna Stanley Sixteen hundred at the Death of their Mother.

"7 I will to my Executor Two Thousand Dollars in trust to be placed as they may deem best the income to go to the support of George Beatty my brother and at his death to be paid to my estate

"8 I hereby order no appraisement be made of my Estate and my debts be paid with out probation and all bills by my Family be taken from their Bequest Befor my Fenueral. I will and Bequeath to my Nephews and Neices children of Robert S. Beatty Martin L. Beatty Joseph W. Beatty Charles A. Beatty and Sarah J. Stanley the sum of Fifty Dollars each. I will to my Executors with full Power to Execute Deed or Deeds to same at public or private sale as they may Deem Best the Proceds to be held in trus after all Bequest are paid as my estate four lots three four six and seven & west half of Five in J. E. Vanpelts sub Division of Lots one two three & four in Block seven of Adams Adition to town no city of Jerseyville Also lots nine and ten in Block thirteen in Hills second addition to Jerseyville the proced to be held as my Estate they to execute Deeds to same without Aproval of court they to be Warrantee

"I will to my Executors in trust my Farms Described as the West half of North west Quarter of section twenty four and the West half of SouthWest Quarter of Section thirty six and twenty eight acres of the north end of east half of south east Quarter in section thirty five all in town eight Range Eleven also the south east quarter of North east Quarter of Section two in Town scven Range Eleven all West of Third Principal Meridian in Jersey Co Illinois (228) acres, to rent or lease as they may Deed Best to pay all taxes and nessary Bill of upkeep and the same to be my estate as long as any of my brothers or sister live and to be sold or leased as my executors may Deem best the proceeds to be divided share & share alik with the children of Francis J. Beatty Martin L. Beatty Robert S. Beatty Joseph W. Beatty Charles A. Bcatty and Sarah J. Stanley my executors to have full control and sell when they deem best in any money in hand to divide it children of the above named nephew and nieces to Rec their Parent share

"I appoint My Brothers Robert S. Beatty and Martin L. Beatty my Executors and if they Fail to serve in the order named to tak either place I name Joseph W. Beatty Charles A. Beatty Robert I. Beatty Dora Beatty Perry A. Beatty Mary Beatty, they all to serve without a bond and they to Rec one hundred Dollars the firs year and Fifty Dollars for the remainder of My estate per year they all to have the same power to act sell and make deed as Directed and Responsible to no court or person having. full confidence they will carry out my will and instructions and should there see fit to divid surplus money they to do as think best                                    John R. Beatty"

Dec 6th 1913

There was written after the signature of the testator and the attesting clause of the witnesses the following:

"Statement should any of my Brothers need money that comes to their Heirs the same to come out of their share, with five per cent interest if on hand                    J R B"

Accompanying the will and in the handwriting of the testator was a sheet of paper which was filed with the will, in words and figures as follows:

"My reasons & Instructions for making this Will and hope my Executors will carry it out for the best interest of My Heirs the third time and two years study to leave my Estate so it would do the most good to the Grater Number I gave to Franks children what I would of Gave to him self if living and all of my Brothers have enought to go through live with what helf I leave them and one Nephew or Niece is as near to me as another and want to treat them all alike that have treated me with consideration and want it settled with out any more cost than possible no Attorney is to be employed but common sence used in all cases that arise I went in the Grand Nephews or nieces in Roys case only as he is Raised among the nephews of his own age and thought that it would be but right to those that are paid before six months their share will be disconted at 5 per cent to those that wait longer then six months to rec 5 per cent as thare will be papers to colect for some time after two years I Re wrote this will some that does not Get as much as they now have my money Some Get more as I have more to leave"

The will was admitted to probate and letters testamentary issued to the testator's brothers, Robert S. and Joseph W. Beatty. The executors filed a bill in the circuit court of Jersey county to construe the will. The bill alleged, in substance, that the will was ambiguous, vague and indefinite, and the executors were unable to determine its meaning and intent and what their powers and duties were under the will.

The children of the deceased brother, Francis J. Beatty, and the children of his deceased daughter, filed a joint answer to the bill, denying the will was so ambiguous and uncertain that its meaning and intent could not be deter-

mined and the powers and duties of the executors ascertained from the language of the instrument. The answer set out at length what respondents claimed to be the meaning and effect of the various provisions of the will and the powers and duties conferred upon the executors under it. The construction asked by respondents as to the farm lands referred to in paragraph 8 was, that the executors were required to "rent or lease" the land till the death of all of testator's brothers and his sister and hold the net income until that time, then the land to be leased or sold and the proceeds distributed *per capita* among the nephews and nieces mentioned. Their answer contended for a construction that would leave none of the estate intestate.

Mary Beatty, the daughter and only child of Robert S. Beatty, one of the executors, filed a separate answer, joining in the request that the will be construed if it be capable of construction. The answer further averred that the many provisions of the will were so uncertain, ambiguous and contradictory as to render it difficult, if not impossible, to give effect to all its provisions, and that to give effect to some of them and disregard others would manifestly defeat the scheme and purpose of the testator in the distribution of his estate, wherefore the entire will should be held inoperative, void and should be set aside. Her answer further contended that if provisions of the will as to the farm lands were sustained, the distribution of the proceeds at the death of all the brothers and the sister among the nephews and nieces should be *per stirpes* and not *per capita.*

Sarah J. Stanley, the sister of testator, and her children, answered, alleging the will showed an attempt of the testator to dispose of his estate according to a plan of its division among the objects of his bounty, but that the instrument was so ambiguous, uncertain and conflicting in its terms and provisions that the enforcement of part of it and declaring parts of it invalid would defeat the plan and intention of the testator in the distribution of his estate, and

that the entire will should be declared void and of no effect. The answer sets out particularly the provisions alleged to be invalid and why they are alleged to be invalid. She also filed a cross-bill, alleging the valid provisions of the will are so interwoven with invalid provisions that to give effect to the former and disregard the latter would be contrary to equity and good conscience and defeat the plan and purpose of the testator for the distribution of his estate. The cross-bill was answered by Robert I. Beatty and those joining with him in the answer to the orignal bill, substantially as in the original answer.

After answers of adults and of guardian *ad litem* for minors and replications were filed and adults not answering were defaulted the cause was submitted to the chancellor, who entered a decree sustaining the validity of the greater portion of the will, construing the valid parts and defining the powers and duties of the executors. The decree finds the latter clause of paragraph 2 providing for the return to testator's estate of the bequest made to Robert S. Beatty, the first sentence of paragraph 8 and the last clause of the same paragraph are invalid and must be disregarded. The decree finds the $2000 trust fund created by paragraph 7, the income from which is to be paid to George Beatty as long as he lives and then "to be paid to my estate," passes as intestate property at the death of George B. to the testator's heirs-at-law.

Plaintiff in error insists that the will is void for uncertainty; that paragraph 8, which purports to dispose of testator's real estate, in addition to being so ambiguous as to render it impossible to determine the testator's intention, violates the rule against perpetuities, and on both grounds should be held void and of no effect; and that if that paragraph is disregarded and not given effect the general plan and scheme of the testator for the distribution of his estate would be defeated and manifest injustice would result from sustaining other valid provisions of the will.

The will, which apparently was written by the testator, is undeniably ambiguous. There is little punctuation in it or division into sentences, and the intention of the testator is uncertain and obscure. While the will is remarkable in many respects, the most serious obstacle to giving it intelligent construction and effect is paragraph 8, which deals with testator's farm lands, constituting about one-half his estate according to the pleadings. The third sentence or clause of said paragraph confers power on the executors to sell at public or private sale the vacant lots owned by testator in the city of Jerseyville and execute warranty deeds without approval of the court, "the Proceds to be held in trus after all Bequest are paid as my estate." The decree finds the will gave the executors full power and authority to sell the Jerseyville lots at such time and on such terms as they deemed best, and apply the proceeds, as far as required, to the payment of specific legacies, costs and expenses, and the proceeds of the sale, if any remained, and the balance of the personal estate, if any, should be intestate property and be distributed among the heirs-at-law of testator according to the laws of descent. The court construed the fourth clause of paragraph 8, which relates to testator's farm lands, (1) to authorize the executors to rent or lease them, and hold the income, after paying taxes and up-keep, until the death of the last surviving brother or sister of testator; (2) to authorize the executors, if they deemed it for the best interests of the estate, to sell, at any time after testator's death and before the death of the last surviving brother or sister, the farm lands or such portion as they desired, at such times and on such terms as they determined; that if the lands, or any part of them, were sold before the death of the last surviving brother or sister, the proceeds of the sale and rents and income derived from the proceeds must be held by the executors until the death of all the brothers and the sister of testator; that if the lands were not sold before such deaths they must be

sold within a reasonable time thereafter, and the proceeds, rents and income remaining after bequests, costs and expenses are paid shall be distributed to the children of the five brothers named and the children of the sister, *per capita,* and in the event of the death of a nephew or niece before the distribution the children of such deceased nephew or niece to receive the parent's share, but in no event was any distribution to be made before the death of all the brothers and the sister of the testator. The decree further finds the will makes no provision for the distribution of any excess of personal property after payment of specific bequests, and that such excess, if any, is to be distributed as intestate estate.

We do not understand paragraph 8 to be capable of the construction given by the chancellor with respect to the farm lands and the powers and duties of the executors in the management and disposal of the same. That part of paragraph 8 which refers to the farm lands gives them in trust to the executors, with power "to rent or lease as they may Deed [deem] Best," pay taxes and necessary up-keep, "the same to be my estate as long as any of my brothers or sister live." Then, without punctuation mark of any kind, the will proceeds: "and to be sold or leased as my executors may Deem best the proceeds to be divided share & share alik with the children" of testator's five brothers named and of his sister, "my executors to have full control and sell when they deem best." The remainder of that clause of paragraph 8 should be read as an independent sentence. It is not so denoted by punctuation or capitalization, but it relates only to distribution of the trust fund and has no reference to the power or authority of the executors to dispose of the land.

We cannot find any warrant in the language of the will for construing it to authorize the executors to sell any portion of the land before the death of all the brothers and the sister of the testator. It appears to us the language

following the power conferred to "rent or lease" the land, that "the same to be my estate as long as any of my brothers or sister live," manifests the testator's intention that it should not be sold until his sister and brothers were all dead.  After all of them were dead "and to be sold or leased," as the executors might deem best, should be construed to read and mean, "then" or "thereafter" to be sold or leased as the executors might deem best.  This construction seems to be strengthened by the language following that referred to:  "my executors to have full control and sell when they deem best."  To our minds the most reasonable, if not the only reasonable, intention indicated by the language of the will is, that in no event is the land to be sold until all the brothers and sister of the testator had died.  Until that time the executors were given authority to "rent or lease" it, the income, if any, above expenses, not to be distributed before the death of the brothers and sister.  After that time the executors were given the discretion to sell or lease it, as they deemed best, and divide the money among the testator's nephews and nieces mentioned.  The discretionary powers given the executors might not be exercised within a life or lives in being and twenty-one years thereafter, and therefore it violates the rule against perpetuities.  "No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest."  (Gray on Perpetuities, sec. 201; *Howe* v. *Hodge,* 152 Ill. 252; *Johnson* v. *Preston,* 226 id. 447; *Madison* v. *Larmon,* 170 id. 65; *Johnson's Estate,* 185 Pa. St. 179; 64 A. S. R. 621; *In re Walkerly,* 108 Cal. 627; 49 A. S. R. 97.)  No estate vested in the nephews and nieces until the sale of the land.  (*Starr* v. *Willoughby,* 218 Ill. 485; *Banta* v. *Boyd,* 118 id. 186.)  The provisions of the will for the disposition of the farm lands, which constituted a large portion of the estate, vio-

late a settled rule of law and must be held inoperative and void, and the property is therefore intestate estate.

This brings us to the question whether the valid and invalid parts of the will are so related to the general scheme of the testator for the distribution of his estate that they cannot be separated without doing violence to the testamentary plan. When that is so the entire will must fall, but if the invalid parts can be separated from the valid parts and still effect be given to the testamentary plan, the valid parts will be upheld and the invalid parts disregarded. (*Carpenter* v. *Hubbard*, 263 Ill. 571; *Eldred* v. *Meek*, 183 id. 26; *Johnson* v. *Preston, supra.*) When a will is good in part and bad in part, the valid part will be held void if it works such a distribution of the whole estate as was evidently never intended by the testator. (*Johnson's Estate, supra.*) The parts of the will that could by any possibility be held valid dispose of less than one-half the estate. Half or more of it, as we read and construe the will, must be held intestate estate and be distributed according to the laws of descent. To sustain the valid parts of the will would make a distribution of the estate never intended by the testator. We do not overlook the numerous decisions holding that the intention of the testator is the polar star in the interpretation of wills; that all rules of construction must yield to the intention expressed in the will when such intention can be ascertained and determined and the intention given effect unless in violation of some rule of law. No doubt the testator intended to make a valid disposition of all his property as indicated by the paper filed with the will, but either because of his ignorance or that of his adviser he did not know the disposition made of a large portion of his estate was in violation of law. Courts cannot, in order to avoid holding such a disposition invalid, change or alter the invalid provisions so as to hold them valid. That would be the creation of a new will by the court. It was aptly said in the *Walkerly case, supra:* "Better that the

intent of a testator should fail in a particular case than that
the court should assume such arbitrary and undefined dis-
cretion over his entire estate.   If we cannot execute the
whole will or some distinct and independent portion of it,
the whole had better be declared void.   The law makes a
better one than will usually be made by the court."

Our conclusion that the whole will must be held invalid
and disregarded and the estate distributed to the testator's
heirs as intestate estate under the laws of descent renders
unnecessary a discussion of the cross-errors of defendants
in error Robert I. Beatty and others, and the contention of
Mary Beatty that any distribution made under paragraph 8
to the nephews and nieces was required to be *per stirpes*
and not *per capita.*

The decree is reversed and the cause remanded, with di-
rections to enter a decree on the cross-bill according to the
views expressed in this opinion.

*Reversed and remanded, with directions.*

---

(No. 13901.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* ROBERT M. DAVIDSON, Plaintiff in Error.

*Opinion filed June 22, 1921.*